UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT RENO, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 4:21 CV 193 CDP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM AND ORDER</u>

On January 14, 2019, movant Robert Reno pleaded guilty to one count of

conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 846,

841(a)(1), and 841(b)(1)(A); one count of distribution of methamphetamine, in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and one count of possession

with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1)

and 841(b)(1)(A).  (*See* Case No. S1-4:16CR380-1, hereafter "CR380".)  On July

3, 2019, I sentenced Reno to concurrent terms of imprisonment aggregating 300

months, which was below the advisory guidelines sentence of life imprisonment.

Alleging that he had been denied counsel of his choice during pretrial proceedings,

Reno appealed the judgment.  The Eighth Circuit Court of Appeals granted the

government's motion to dismiss the appeal based on the waiver in Reno's plea

agreement.  *United States v. Reno*, Case No. 19-2615 (8th Cir. Jan. 10, 2020).

Reno now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, alleging several claims of ineffective assistance of counsel.  For the reasons that follow, I will deny Reno's motion to vacate.

## Background

On August 25, 2016, Reno and four others were charged in this district with conspiracy to distribute methamphetamine.  Reno was also charged with distribution of methamphetamine and being a felon in possession of a firearm.  He made his initial appearance on the indictment on August 31, 2016, at which time the federal public defender was appointed to represent him.  Given the complexity of the case, and upon several requests by the defendants, United States Magistrate Judge Shirley P. Mensah, who presided over the pretrial matters in this case, granted defendants to February 1, 2017, to file pretrial motions.  (CR380, ECF 80.)  Upon Reno's additional requests, Judge Mensah extended his motion deadline to March 23.  (*Id.*, ECF 112.)

Attorneys John Rogers and William Mueller entered their appearance as retained counsel for Reno in March 2017.  After being granted additional time, they filed motions to suppress on May 4, and Judge Mensah set the motions for hearing on May 24.  On counsel's motion, however, Judge Mensah ordered that Reno undergo a competency examination, and the hearing on the motions to suppress was continued.  Judge Mensah held a competency hearing in November

2017 and concluded that Reno was competent to proceed.

In the meanwhile, on June 28, 2017, an eight-count superseding indictment was returned against Reno and co-defendant Douglas Druger[1] in which Reno was charged in five counts:  1) conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); 2) distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); 3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); 4) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2); and 5) possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2.

At the competency hearing on November 9, 2017, attorneys Rogers and Mueller were granted leave to withdraw, and Reno orally requested the appointment of counsel.  After receiving Reno's financial affidavit, Judge Mensah appointed Talmage Newton to represent him.  Newton thereafter withdrew the pending motions to suppress, and Judge Mensah granted time to file additional motions.  On March 21, 2018, Newton filed two motions to suppress evidence, and Judge Mensah set a hearing on the motions for April 30.  On April 27, however,

---

[1] The three other co-defendants had pleaded guilty to the original indictment, and they awaited sentencing.

attorneys Beau Brindley and Michael Thompson entered their appearance on behalf of Reno, informing the Court that Reno's family had retained them.  Judge Mensah granted Newton's motion to withdraw and continued the evidentiary hearing to May 31.

After granting additional requests by Brindley to continue the evidentiary hearing because of his reported unavailability, Judge Mensah set the hearing for August 30, 2018, cautioning that the hearing would not be continued beyond August.  The day before the hearing, on August 29, Brindley filed an "Agreed Motion to Strike Evidentiary Hearing and Withdraw Motions."  Judge Mensah held a hearing on that motion on August 30, at which Reno, attorney Thompson, and the assistant United States attorney were present.  Reno stated on the record that he had not been in contact with his attorneys before the hearing and disagreed with the decision to withdraw the motions.  Given the apparent lack of communication between Reno and his attorneys, Judge Mensah denied the motion to withdraw the motions to suppress and directed defense counsel to confer with Reno and, if necessary, explain why they sought to withdraw the motions.  She rescheduled the evidentiary hearing for September 12.  Because of a scheduling conflict involving a government witness, the hearing was reset to September 18.

When the Court called the case for hearing on September 18, neither Brindley nor Thompson was there.  Defendant Reno, the assistant United States

attorney, and the government witnesses were present and ready to proceed.  Reno

informed Judge Mensah that he and his family had been unsuccessful in their

attempts to contact his attorneys since August 30, and government counsel

likewise stated that his multiple attempts to contact Reno's attorneys were

unsuccessful.  Judge Mensah informed Reno that her own efforts to reach his

attorneys were unsuccessful and that calls to their office went unanswered.  She

told Reno that it appeared that his attorneys had abandoned him.  Reno asked her

to appoint counsel to represent him in future proceedings, and he filed another

financial affidavit.

      In an Order entered that same date, Judge Mensah found that retained

counsel Brindley and Thompson had abandoned Reno and she terminated them as

attorneys of record.  She reappointed Talmage Newton to represent Reno and

scheduled an evidentiary hearing on the motions to suppress for October 5.  She

also ordered Brindley and Thompson to show cause why they should not be held in

criminal contempt.

      On October 3, two days before the scheduled hearing, attorney Newton

moved to withdraw as counsel and to continue the hearing, stating that Reno

wished to proceed with Brindley and Thompson as his attorneys and had instructed

Newton to withdraw; that he had confirmed with Brindley's office that they

intended to represent Reno; that Brindley and Thompson were unavailable for the

October 5 evidentiary hearing; and that Reno consented to a continuance of the hearing and would waive his speedy trial rights so that he could have his counsel of choice.  Citing the lengthy pendency of the pretrial motions, Reno's documented insistence that the motions be heard, and that Newton was the attorney who filed the motions, Judge Mensah determined not to continue the evidentiary hearing "solely to accommodate Defendant Reno's on-again off-again retained attorneys." (CR380, Order, ECF 376 at p. 2.)  The hearing proceeded on October 5 with Newton as Reno's attorney.  Neither Brindley nor Thompson appeared.  On November 7, Judge Mensah issued a Report and Recommendation on the motions to suppress.  No objections were filed to the recommendations made therein.

Judge Mensah thereafter held a hearing on Newton's motion to withdraw and a criminal contempt show cause hearing.  On November 13, she entered a Memorandum, Order, and Recommendation, finding that Brindley and Thompson were in contempt of Court; granting Newton leave to withdraw as lead counsel; and directing the Clerk of Court to reinstate Brindley and Thompson on the docket as Reno's lead counsel.  Judge Mensah recommended that I appoint Newton as stand-by counsel and, further, that I sanction Brindley and Thompson by ordering them to pay any fees incurred by Newton as stand-by counsel.  No objections were filed to the recommendations.

On December 6, 2018, I adopted the recommendations made by Judge

Mensah in her November 7 Report and Recommendation and in her November 13 Memorandum and Recommendation, and I entered orders consistent therewith. Trial was set for January 14, 2019.

At defense counsel's request, the matter was set for a change of plea on December 19, 2018.  But when I called the case that date, attorney Thompson announced to the Court that Reno was not prepared to plead guilty.  The matter remained set for trial on January 14.

When I called the case for trial on January 14, attorney Brindley announced that Reno intended to plead guilty to the three drug counts pursuant to a written plea agreement with the government.  I accepted Reno's guilty plea that same date and I discharged attorney Newton from his responsibility as stand-by counsel.  A lengthy sentencing hearing was held on June 14, after which I sentenced Reno on July 3 to two 300-month terms of imprisonment and one 240-month term of imprisonment, with the terms to be served concurrently.  Judgment was entered on the docket on July 7.  On July 25, Brindley filed a notice of appeal on Reno's behalf, after which I granted him the additional time to do so.  The court of appeals appointed Brindley to represent Reno on appeal.  Case No. 19-2615 (8th Cir. Sept. 6, 2019) (order).

Reno raised one claim on appeal:  that the magistrate judge erred in denying him his counsel of choice at the October 5, 2018, evidentiary hearing on his

motions to suppress.  Case No. 19-2615 (8th Cir. Nov. 25, 2019).  The government
moved to dismiss the appeal, arguing only that Reno waived his right to raise the
claim, given that the plea agreement provided that the parties waived appellate
rights to raise all non-jurisdictional, non-sentencing issues, including any issues
related to pretrial motions.  On January 10, 2020, the court of appeals granted the
government's motion to dismiss.  Mandate issued January 31, 2020.

**Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255**

Reno filed the instant motion to vacate on February 12, 2021.  Although he
lists 41 separate "grounds" alleging that attorney Beau Brindley rendered
ineffective assistance, several of the grounds assert the same claim(s) or iterations
of the same claim(s).  The general claims are set out below, with each related
"ground" identified by the number designated in Reno's § 2255 motion:

Claim 1 – Failure to Argue that Reno was Denied Counsel of Choice
(Grounds 6-11, 13-16, 26-28, 30-31, 37-38)

Claim 2 – Failure to Appear at Pretrial Hearings
(Grounds 1-3, 5, 29)

Claim 3 – Failure to File Timely Notice of Appeal
(Ground 4)

Claim 4 – Failure to Request Pretrial Discovery
(Grounds 19-25)

Claim 5 – Failure to File Pretrial Motions to Suppress and/or Dismiss
(Grounds 36, 39-41)

Claim 6 – Ineffective Counsel at Plea

                (Grounds 33-35)

Claim 7 – Ineffective Counsel at Sentencing
                (Grounds 17-18)

Claim 8 – Counsel is a Known Liar
                (Grounds 5, 32)

I will deny Reno's motion to vacate without an evidentiary hearing for the reasons that follow.

## Discussion

A.    <u>An Evidentiary Hearing is Not Required</u>

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citations omitted). Reno's claims here are inadequate on their face and/or conclusively refuted by the record. Because the record conclusively shows that Reno has no right to relief, I will not hold an evidentiary hearing.

B.    <u>Ineffective Assistance of Counsel</u>

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel, *Chesney v. United States,* 367 F.3d 1055, 1058 (8th Cir.

2004), and that right extends to plea negotiations, *Missouri v. Frye,* 566 U.S. 134, 144 (2012); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985), and sentencing, *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).  Claims of ineffective assistance of counsel are governed by the two-part test set out in *Strickland v. Washington,* 466 U.S. 668 (1984).  Accordingly, to prevail on his claims, Reno must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. *Tinajero-Ortiz v. United States,* 635 F.3d 1100, 1103 (8th Cir. 2011).  To establish prejudice, Reno must prove a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different.  *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).  I need not address both components of the *Strickland* test if Reno makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

      1.    *Claim 1 – Failure to Argue that Reno was Denied Counsel of Choice*

The premise of several of Reno's grounds for relief is his assertion that he was denied his counsel of choice – specifically, Beau Brindley – at the evidentiary hearing held October 5, 2018, before Judge Mensah.  Reno argues in these grounds that Brindley rendered ineffective assistance when he failed to make various arguments to the Court on the counsel-of-choice issue, including that Reno was pressured and misled into requesting and accepting the reappointment of attorney Newton when Judge Mensah stated on the record that Brindley's failure to

communicate with Reno and appear at court proceedings constituted abandonment; and that Judge Mensah should have continued the October 5 evidentiary hearing to permit Brindley to appear as counsel of choice, instead of proceeding with Newton acting as Reno's attorney.  Because Reno was not unconstitutionally denied his counsel of choice in the circumstances of this case, his various assertions that attorney Brindley was ineffective in failing to argue the issue necessarily fail.

The Sixth Amendment's right to counsel includes "the right of a defendant who does not require appointed counsel to choose who will represent him."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)).  This "right to counsel of choice" commands that the "accused be defended by the counsel he believes to be best."  *Id.* at 146.  Where a court erroneously deprives a defendant of his counsel of choice, no additional showing of prejudice is required to make a Sixth Amendment right-to-counsel violation complete.  *Id.*  "[E]rroneous deprivation of the right to counsel of choice" is a "structural error" that "bears directly on the framework within which the trial proceeds, or indeed on whether it proceeds at all."  *Id.* at 150 (internal quotation marks and citation omitted).  Notably, the right is not limitless.  Accordingly, only an *erroneous* decision denying counsel of choice violates the Sixth Amendment.  *See Gonzalez-Lopez*, 548 U.S. at 150; *Porello v. United States*, No. 00-00004-09-CR-W-ODS, 2011 WL 1330802, at *3 (W.D. Mo. Apr. 6, 2011).  For the

following reasons, Judge Mensah's decision to proceed with the evidentiary hearing on October 5 with appointed counsel Newton as Reno's attorney and to not continue the hearing to accommodate Brindley's habitual unavailability was not an erroneous deprivation of Reno's right to his counsel of choice at the hearing.

Courts have "wide latitude" in balancing a defendant's Sixth Amendment right to counsel of choice against, *inter alia*, the needs of fairness, the enforcement of rules, and the demands of its calendar. *Gonzalez-Lopez*, 548 U.S. at 151-52. Moreover, "[a] defendant's 'right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice.'" *United States v. Cordy*, 560 F.3d 808, 815 (8th Cir. 2009) (quoting *United States v. Vallery*, 108 F.3d 155, 157 (8th Cir. 1997)).

Here, beginning with his initial appearance in August 2016, Reno repeatedly demonstrated that he did not have the financial ability to retain an attorney, thus permitting the Court to appoint counsel to represent him in the case. After Reno's family retained Brindley and Thompson twenty months later in April 2018, Judge Mensah permitted appointed counsel to withdraw and accommodated Brindley's multiple requests to extend the pretrial deadlines in the case and to reschedule the evidentiary hearing on pretrial motions, with some requests coming the day before the scheduled hearings. Indeed, when Judge Mensah finally ordered that she would not grant an extension to a date beyond August 2018, Brindley filed – the

day before the hearing – a motion to withdraw the pending motions and to cancel the hearing.  At the August 30 hearing on *that* motion, Reno informed Judge Mensah that neither Brindley nor anyone from his office communicated with him since entering the case (CR380, Hrg. Tr., ECF 518 at p. 13) and that he was unaware of and disagreed with counsel's decision to withdraw the pretrial motions.

After Judge Mensah rescheduled the evidentiary hearing *again* – this time to September 18 – so that Reno could consult with his attorneys, neither Brindley nor Thompson appeared at that hearing, and Reno told Judge Mensah *again* that his attorneys had been incommunicado.  At that aborted hearing, Judge Mensah made a record that the attempts made by Reno, his family, the government, and herself to contact Brindley had been unsuccessful, and Reno stated on the record that he and his family would be looking to hire different attorneys because "this is how it's been the entire time."  (CR380, Hrg. Tr., ECF 497 at p. 3.)  Given Reno's statements, Brindley's history of lack of communication and lack of engagement with Reno, and Brindley's current failure to appear, Judge Mensah surmised that Brindley had abandoned Reno.  Reno agreed.  (*See generally id.*, ECF 497.)  It was therefore entirely reasonable for Judge Mensah to reappoint counsel at Reno's request.

It was also entirely reasonable for Judge Mensah to not continue the evidentiary hearing from the rescheduled date of October 5 and to proceed with

appointed counsel Newton at that hearing despite Reno's renewed desire for Brindley to represent him and Brindley's unavailability.  Considering Brindley's well-documented history of repeatedly requesting extensions and continuances at the eleventh hour, failing to appear in court, failing to communicate with his client, and showing no regard for the deadlines and schedules set by the Court, Judge Mensah's determination to not continue the October 5 hearing and to proceed with appointed counsel was well within the wide latitude given district courts when concerns for fairness in the judicial process, the demands of the Court's calendar, and the Court's inherent power to control the administration of justice are at stake. This is especially so here when the case had been pending more than two years, trial against co-defendant Druger had concluded more than one year earlier in September 2017, the remaining co-defendants had pleaded guilty sixteen months earlier in June 2017, and Reno's pretrial motions had been pending several months. Her decision was therefore not an erroneous denial of Reno's counsel of choice at that hearing.  *See Cordy*, 560 F.3d at 815 (right to counsel of choice "must not obstruct orderly judicial procedure"); *cf. United States v. Hughey*, 147 F.3d 423, 431 (5th Cir. 1998) (a defendant is not constitutionally entitled to unavailable counsel) (citing *United States v. Barrentine*, 591 F.2d 1069, 1075 (5th Cir. 1979)).

Reno asserts that Brindley was ineffective because he failed to raise several arguments to the Court premised on the claim that Reno was denied his counsel of

choice at the October 5, 2018, hearing.  As set out above, any arguments based on

this premise would have been without merit.  Because counsel cannot be found

ineffective for failing to pursue meritless arguments, *Rodriguez v. United States*,

17 F.3d 225, 226 (8th Cir. 1994), all of Reno's grounds for relief relating to

Brindley's failure to make counsel-of-choice arguments must fail.

Accordingly, Claim 1 – comprising Grounds 6-11, 13-16, 26-28, 30-31, and

37-38 of Reno's motion to vacate – is denied.

 2.     *Claim 2 – Failure to Appear at Pretrial Hearings*

As set out above, Brindley did not appear at the scheduled evidentiary

hearing on September 18, 2018, or at the rescheduled setting of October 5, 2018.

In response to Judge Mensah's show cause order, and in his brief on appeal,

Brindley represented that his absence was on account of an unintentional

calendaring error that amounted to nothing more than negligence.  Reno argues

that Brindley's failure to appear and his admitted negligence constituted ineffective

assistance.

Despite Brindley's failure to appear, Reno was nevertheless able to argue

and present evidence to the Court on his motions to suppress through the assistance

of competent counsel.  Reno was therefore not denied counsel at a critical state of

the judicial process nor, as discussed above, was denied his counsel of choice.

And Brindley had an opportunity to file objections to the Report and

Recommendation that resulted from the hearing but did not do so.[2]  Accordingly, while Brindley's conduct with regard to not appearing at scheduled evidentiary hearing(s) was far from exemplary, Reno has failed to show how he was prejudiced because of it.  *See White v. Burt*, No. 17-CV-13567, 2018 WL 3586377, at *5 (E.D. Mich. July 26, 2018) (attorney's failure to appear at suppression hearing does not alone result in actual prejudice to defendant); *cf. Johnson v. Cabana*, 661 F. Supp. 356, 363 (S.D. Miss. 1987) (no prejudice in counsel failing to appear at hearing where claim defendant wanted pursued was investigated).

Claim 2 – comprising grounds 1-3, 5, and 29 of Reno's motion to vacate – is denied.

3.    *Claim 3 – Failure to File Timely Notice of Appeal*

The notice of appeal was docketed in the Eighth Circuit Court of Appeals upon my granting attorney Brindley's request to extend the time to file the notice, and the appeal proceeded to its conclusion.  The Eighth Circuit dismissed the appeal based on the government's argument that Reno had waived the claim raised, not because of untimeliness.  Reno has not shown that the outcome of the proceeding would have been different if counsel had filed his notice of appeal within the time prescribed by the federal rules without needing leave to do so.

---

[2] As discussed more fully below, Reno testified at his plea hearing that Brindley did everything that Reno asked him to do.  Any claim, therefore, that Brindley was ineffective in not objecting to the R&R would be without merit.

Claim 3 is denied.

4.      *Claim 4 – Failure to Request Pretrial Discovery*, and
        *Claim 5 – Failure to File Pretrial Motions to Suppress and/or Dismiss*

In Grounds 19 to 25, Reno claims that attorney Brindley rendered ineffective

assistance by failing to make several pretrial requests for discovery, including

requests for copies of video footage, information obtained from Reno's cell phone,

a copy of a December 2015 search warrant, lab reports, and Jencks Act material.

In Grounds 36, 39, and 40, Reno claims that Brindley was ineffective in failing to

file motions to suppress evidence arguing that search warrants and wiretaps were

illegally obtained and that an Audrain County deputy sheriff made a false police

report.  In Ground 40, Reno claims that Brindley should have filed a motion to

dismiss based on the unlawful seizure of evidence.  Because the record and Reno's

own sworn testimony contradict his assertions of ineffective assistance, I will deny

the claims.

In the written plea agreement and under oath at the plea colloquy, Reno

stated that he was satisfied with Brindley's performance and that Brindley had

done everything he had asked in his course of representation.  When I asked Reno

if there was anything he wanted counsel to do in representing him that he had

failed or refused to do, Reno said no.  (CR380, Plea Agrmnt., ECF 417 at p. 13;

Plea Tr., ECF 437 at pp. 5-6, 23-24.)  "Solemn declarations in open court carry a

strong presumption of verity."  *Smith v. Lockhart*, 921 F.2d 154, 157 (8th Cir.

1990) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Reno cannot

contradict his sworn testimony now by claiming otherwise.  Accordingly, Reno's

statements under oath at the plea hearing that Brindley did all that Reno asked him

to do preclude Reno's claims here that Brindley was ineffective in failing to

request certain pretrial discovery, failing to file motions to suppress, and failing to

file a motion to dismiss.  *See Jackson v. United States*, No. 4:19-CV-1045 RLW,

2022 WL 4078867, at *7 (E.D. Mo. Sept. 6, 2022); *Johnson v. United States*, No.

4:10-CV-1531 CDP, 2011 WL 1559764, at *4 (E.D. Mo. Apr. 25, 2011).

Claim 5 also fails because Reno does not show that he was likely to succeed

on either a motion to suppress or to dismiss on the bases he now raises.  Failure to

file a pretrial motion does not itself establish ineffective assistance of counsel.

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  Where a § 2255 movant who

enters a guilty plea claims his counsel was ineffective for failing to litigate Fourth

Amendment claims, he can obtain habeas relief only if he can prove that the claims

were meritorious.  *See United States v. Luke*, 686 F.3d 600, 605 (8th Cir. 2012)

(citing *Kimmelman*, 477 U.S. at 375).  Reno does not offer facts or law sufficient to

show a reasonable probability that pretrial motions challenging searches and

seizures on the bases he now proffers would have succeeded.  *See Jackson*, 2022

WL 4078867, at *7 (citing *White v. Helling*, 194 F.3d 937, 942 (8th Cir. 1999)

(must look at facts and circumstances available to counsel at the time)).

- 18 -

For these reasons, Reno cannot establish either prong of the *Strickland* test: that his counsel's failure to request pretrial discovery and to file motions to suppress and/or to dismiss was conduct that fell below the objective standard of reasonableness, or that Reno suffered prejudice as a result.

Claims 4 and 5 – comprising Grounds 19-25, 36, and 39-41 of Reno's motion to vacate – are denied.

5. *Claim 6 – Ineffective Counsel at Plea*

Reno claims that attorney Brindley rendered ineffective assistance in relation to his guilty plea because Brindley failed to sufficiently go over the plea agreement with him before the plea hearing; forced Reno to plead guilty through bad advice, pressure, and false promises; and failed to challenge the representation made in the plea agreement and by the Court regarding Reno's knowledge of certain drugs. Reno's claims are unsupported by – and indeed contrary to – the record.

In the plea agreement, Reno agreed that no person either directly or indirectly threatened or coerced him in connection with his entering a guilty plea. (CR380, Plea Agrmnt., ECF 417 at p. 14.)  Likewise, at the plea hearing, Reno swore under oath that no one had threatened him or forced him in any way to plead guilty, and that he was entering his guilty plea voluntarily.  (*Id.*, Plea Tr., ECF 437 at pp. 7, 27-28.)  "[A] defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent

collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir.

1997) (internal quotation marks and citation omitted); *see also Blackledge*, 431

U.S. at 73.  To the extent Reno claims Brindley gave him "bad advice" on the plea,

this conclusory allegation without specifics is subject to summary dismissal,

*Blackledge*, 431 U.S. at 73; *Tran v. Lockhart*, 849 F.2d 1064, 1068 (8th Cir. 1988),

and does not satisfy Reno's heavy burden in overcoming the strong presumption

that counsel's conduct fell within the wide range of reasonable professional

assistance.  *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

The record also directly refutes Reno's claim that he did not have time to

review and understand the plea agreement before entering his guilty plea:

> Q      The lawyers have given me a document called Guilty Plea Agreement.
> Do you have a copy of that in front of you?
>
> A      Yes, Your Honor.
>
> . . .
>
> Q      Did you sign this document here today?
>
> A      Yes, Your Honor.
>
> Q      Did you read it and discuss it with your lawyer before you signed it?
>
> A      Yes, Your Honor.
>
> . . .
>
> Q      Is there anything in here that you disagree with or you don't
> understand?

A       No, Your Honor.

(CR380, Plea Tr., ECF 437 at pp. 7-8.)  Moreover, I went over the plea agreement

with Reno, paragraph by paragraph, and repeatedly asked him if he understood,

which he repeatedly testified that he did.  Reno's claim that Brindley failed to

sufficiently go over the plea agreement with him and that he did not understand the

agreement before pleading guilty is belied by the record and will be denied.

The record likewise belies Reno's claim that Brindley failed to challenge the

recitation of facts set out in the plea agreement and as I summarized at the plea

hearing regarding Reno's knowledge of certain drugs that were found and seized in

the course of the criminal investigation.  The plea agreement set out that 2841

grams of methamphetamine were found at and seized from a shop at 117 S. Olive

in Mexico, Missouri, upon execution of a search warrant at that location on

December 17, 2015.  (CR380, Plea Agrmnt., ECF 417 at p. 6.)  During the plea

colloquy, Reno agreed that methamphetamine was found at the shop on that date

and that he possessed it.  (CR380, Plea Tr., ECF 437 at pp. 18-19.)  Later in the

plea hearing, however, after consulting with Reno, attorney Brindley sought to

clarify that while Reno knew that there were more than 500 grams of the drug at

that location and that he possessed more than 500 grams, he did not know that

there were 2841 grams there.  (*Id.* at pp. 30-31.)  During follow-up questioning,

Reno admitted that he possessed with intent to distribute 500 grams of

methamphetamine that was found at the shop on December 17, 2015.  (*Id.* at p. 31.)  Because these admitted facts met the elements of the offense charged in Count Six of the superseding indictment, I accepted the guilty plea to this count based on Reno's admissions.  (*Id.* at pp. 31-32.)  Reno's claim that Brindley failed to raise a challenge to Reno's knowledge of the drugs is without merit.

Claim 6 – comprising Grounds 33-35 of Reno's motion to vacate – is denied.

6.     *Claim 7 – Ineffective Counsel at Sentencing*

Reno claims that attorney Brindley failed to give him a copy of the presentence investigation (PSI) report before sentencing and failed to refute "untrue facts" contained therein.  While it is true that Brindley failed to provide Reno sufficient opportunity to review the PSI before the sentencing hearing on June 14, 2019, I recessed the hearing that date and reset it to July 3 so that Reno could read the report, discuss it with counsel, and raise any issues or corrections before sentencing.  (*See* CR380, Sent. Hrg. Tr., ECF 500 at pp. 95-96, 104.)  When we reconvened on July 3, Reno stated on the record that he had reviewed the PSI and discussed it with his attorney, and that there were no objections in addition to those already raised by counsel that he wished to raise.  (*Id.*, Sent. Tr., ECF 495 at pp. 3-4.)

The objections that counsel had already raised included several challenges to

facts set forth in the PSI relevant to sentencing (*see* CR380*,* Sent. Memo., ECF 454), and those challenges were subject to a three-hour sentencing hearing where evidence was adduced on those facts.  (*Id.*, Sent. Hrg. Tr., ECF 500.)  Given that counsel indeed challenged PSI facts both in writing and at the sentencing hearing, and that Reno stated on the record that he did not wish to make any additional challenges, Reno's cursory and nonspecific claim here that Brindley failed to refute "untrue facts" is without merit.

Accordingly, the bases on which Reno claims Brindley rendered ineffective assistance at sentencing are refuted by the record and have no merit.  Moreover, Reno has failed to establish prejudice by Brindley's challenged conduct.

Claim 7 – comprising Grounds 17 and 18 of Reno's motion to vacate – is denied.

7.     *Claim 8 – Counsel is a Known Liar*

When I determined to recess Reno's sentencing hearing on June 14, 2019, and to reset it so that Reno could review the PSI, attorney Brindley stated that he was unable to appear on a particular date because another client of his was scheduled for trial.  Given the hit-and-miss nature of Brindley's appearances in this Court and his pattern of making last minute requests for continuances, I asked for identifying details of that trial so I could verify Brindley's representation to me that he had a scheduling conflict.

THE COURT:  . . . If I find out this is not true, there will be sanctions.

MR. BRINDLEY:  Obviously it's true, Judge.

THE COURT:  Well, I can't say obviously with you, Mr. Brindley, because I'm not sure that you have been straight with me all along.

(CR380, Sent. Hrg. Tr., ECF 500 at p. 97.)  Reno claims in Ground 32 of his motion (which I rebranded as Claim 8) that Brindley rendered ineffective assistance by being a known liar which, Reno claims, was demonstrated by the statement I made above.  In his other 40 grounds for relief, Reno identifies only one instance when Brindley purportedly lied to him – that is, when he told Reno that he would be present and represent him at the October 5, 2018, pretrial evidentiary hearing and then did not appear (*see* Ground 5).

As discussed above, Reno suffered no prejudice by Brindley's failure to appear at the October 5 evidentiary hearing, given that Reno was represented by competent counsel who filed and thoroughly argued his motions to suppress.  If Brindley had not "lied" and either a) appeared at the hearing as promised, or b) told Reno that he would not be there (which, apparently, he had told Newton since Newton made that representation to the Court), Reno has not demonstrated that the result of the proceeding would have been different, especially when Brindley had an opportunity to file objections to the Report and Recommendation that resulted from the hearing but did not do so.  Reno has not identified any other instance where Brindley purportedly lied to him or where his reputation as a liar had a

detrimental effect on the proceedings.  His cursory allegation that Brindley was ineffective because of being a liar, with nothing more, is insufficient to establish ineffective assistance of counsel.

Claim 8 – comprising Grounds 5 and 32 of Reno's motion to vacate – is denied.

### I Will Not Issue a Certificate of Appealability

As Reno has not made a substantial showing of the denial of a federal constitutional right, I will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that movant Robert Reno's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Reno has not made a substantial showing of the denial of a federal constitutional right.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 5th day of July, 2023.

- 25 -